Baldwin v. The Union Insurance Company.

JANE BALDWIN *v*. THE UNION INSURANCE COMPANY.

Where an action had been commenced by a married woman, without the authority of her husband or of the court, who two days after obtained a judgment of separation from bed and board, on an exception to her right to sue, *Held:* that the exception should be overruled, as it would have been useless to dismiss a suit which might be commenced immediately afterwards, her disability having been removed.

By the Roman law, one who made constructions on soil which he knew to belong to another, was presumed to be willing to lose his materials, and had no claim against the owner of the ground, who acquired an absolute right to whatever was erected on it. By the laws of this state, Civ. Code, art. 500, the owner of the soil has the right to have the buildings removed at the expense of the person who erected them, or to keep them on paying the value of the materials and the price of the workmanship; but, until this election be made, such works, though subject to the right of acquisition given to the owner of the soil, continue to belong to, and are at the risk of the party who erected them.

All the rights and property of the insolvent pass to his creditors by the surrender, whether included in his schedule or not.

APPEAL from the Commercial Court of New Orleans, *Watts*, J.

MORPHY, J.*  On the 21st of March, 1837, Joseph D. Baldwin effected insurance on two houses situated in the city of Lafayette, for $6,500. The policy was afterwards transferred by him to his wife Jane Baldwin, with the consent of the company, and on the 8th of April, 1838, was renewed by her for another year from the 21st of March, 1838. The houses insured were

---

* GARLAND, J., being interested, did not sit on the trial of this case.

Baldwin v. The Union Insurance Company.

destroyed by fire on the 3d or 4th of January, 1839. It is admitted that they were built during the marriage between the plaintiff and Baldwin, on two lots of ground belonging to John Charles Deacon, a minor, the son of the plaintiff by her first marriage with John Deacon, who had previously purchased these lots of Samuel Livermore some time in 1825. This suit is brought by the plaintiff, in her own name, to recover the amount of the policy which she avers is due to her in her own right, and as natural tutrix of her son. The defence is, that the plaintiff has no right of action on the policy. That she never was the owner of the houses insured, but that they were built by Baldwin during the marriage, and not with any funds belonging to her. That the assignment of the policy to her was illegal, void, and intended to defraud the creditors of the community, to the knowledge of the plaintiff, Baldwin being then in insolvent circumstances. That shortly after the assignment, Baldwin applied for the relief accorded by law to insolvent debtors, and that oppositions were filed, charging him with fraud for not surrendering to his creditors his interest in these houses, which are still pending. That the defendants have been notified by one of the creditors not to pay the insurance money to the plaintiff; and, finally, that the underwriters are not liable at all on their policy, because Baldwin set fire to the houses himself. There was a judgment below in favor of the plaintiff, and the defendants have appealed.

*Roselius*, for the plaintiff. All constructions and improvements made on the soil, are presumed to have been made by the owner of the soil, and at his expense. Civ. Code, art. 498. The soil is proved to belong to plaintiff's minor child ; and no evidence has been adduced to repel the presumption that the buildings were erected at his expense. The title to the buildings would still be in the owner of the soil, though the evidence should be considered to have established that they were erected at the expense of another. The Roman law is express on this subject. "*Ex diverso, si quis in alieno solo sua materia ædificaverit, illius fit ædificium, cujus et solum est. Et si scit alienum solum esse, sua voluntate amisisse proprietatam materiæ intelligitur. Itaque, ne diruto quidem ædificio, vindicatio ejus materiæ competit.*" Pandectæ, lib. 41, tit. 1, n. 26. De Acquirendo Rerum Dominio. See also Pothier, Traité

de Propriété, No. 120.   Merlin, Rép. de la Jurisp., *verbo* Accession.   1 Motifs et Discours du Code Civil, 292—297.   Institutes, lib. 2, tit. 1, De Divisione Rerum et Qualitate, § 29, 30.   Her minor child and ward having a legal title to the buildings, the plaintiff had an insurable interest.   She had a direct interest in the rents, and being bound to administer the property with prudence and care, she would, in case of failure to insure, have been responsible for the loss.   This responsibility extended to Baldwin, the second husband, who became a tutor by his marriage.   Any interest is sufficient to enable a party to insure ; and he need not disclose its nature, unless the information be requested.   See Philips on Insurance.

*Hoffman*, contra.   The judge below erred in deciding, 1. That the houses belonged to the owner of the lots ;   2. That the payment of the premium made the policy the plaintiff's ;   3. That the burning of the houses, by the husband, did not affect the wife's right to recover.   The Civil Code of this state, article 500, provides for the case of buildings erected on ground belonging to another.   It gives the latter the right to retain the buildings, on paying the cost of the materials and workmanship, or to require their removal.   The buildings could not, in the present case, have ceased to belong to the community existing between the plaintiff and her husband, till the owner of the soil had made his election whether to retain them or not.   No such election was made.   The premium, though paid by the wife, must be presumed to have been made with the funds of the community ; and there was no evidence to the contrary.   The husband is the head of the community, and if, by any act of his, he destroys the common property, the loss must fall on the community.

MORPHY, J.   The judge overruled, correctly we think, an exception taken to the plaintiff's right to sue, on the ground that at the time of the institution of this suit she had not been separated from bed and board from her husband, and had received no authority to sue either from him or from the court.   It appeared, on the trial of the exception, that the judgment of separation from bed and board had been rendered on the 8th of April, 1839, two days after the filing of her petition in this case.   It would have been doing a vain and useless thing, to dismiss a suit which she

could have brought again the very next day, her disability having been removed. Code of Pract. art. 106. But it is said that the judgment of separation is a nullity, unless executed, and that nothing shows that it has been executed. It appears from the evidence that Baldwin had failed some time before, and that he had left the state for Texas shortly before the rendition of the judgment of separation, which does not decree him to pay any sum of money, but gives his wife the possession and management of some property she had sequestered. We cannot see what further execution such a judgment is susceptible of.

In support of the plaintiff's right to recover, it is urged, that under article 498 of the Civil Code, all constructions and improvements made on the soil are presumed to have been made by the owner, and at his expense, and to belong to him until the contrary is proved; that the soil, in the present case, is shown to belong to the plaintiff's son, of whom Baldwin, her second husband, became co-tutor; that it must be presumed that he had the insurance effected for the benefit of the minor, because it was his duty, as well as that of the natural tutrix, to administer their ward's property with care and prudence, and therefore to have it insured; and that it must be further presumed, that the transfer of the policy from Baldwin to his wife, was made to her in her capacity of natural tutrix; that thus she had an insurable interest in her own right, and was not bound to disclose the nature of her interest, unless the underwriters asked for information on the subject. The facts of the case stand in opposition to this string of presumptions. The whole evidence in the record, taken together, satisfies us that the houses in question were built by Baldwin, and at his expense. This impression is much strengthened by the absence of proof that the minor had any means whatever, independent of the vacant lots left to him by his father. But it is contended, that even if these houses were put up at the expense of Baldwin, still the property vested in the owner of the lots; and we have been referred to the Roman law, book 41, tit. 1, sect. 12, *De Acquirendo Rerum Dominio.* Under the Roman law, the doctrine of accession was carried so far, that the person who made constructions on a soil which he knew to belong to another, was presumed to be willing to lose his materials, and had no claim

whatever against the owner of the soil, who acquired an absolute right to whatever was erected on it. Our law, Civil Code, article 500, has so far modified the effects of accession in such cases, as to give to the owner of the soil only the alternative of having the buildings removed at the cost of the person who erected them, or of keeping them as his own on paying to the owner of the materials their value and the price of workmanship. Until this election be made, the works, although subject to this right of acquisition given to the owner of the soil, continue to belong to, and are at the risk of the person who made them. Had these houses not been insured, the loss would surely have fallen on Baldwin, or his creditors, who would have had no claim whatever against the owner of the soil. Baldwin, who at least had an insurable interest in, if not the absolute ownership of these houses, procured an insurance in his own name, not in that of the minor. He afterwards transferred the policy to his wife in her individual capacity, not as tutrix of her child. A transfer by one tutor of the minor to the other, had the policy really been taken for his benefit, would have been a most idle and senseless proceeding. On the 7th of April, 1838, Jane Baldwin had the policy renewed for one year, by paying the premium in her own name, and not as tutrix. Soon after the fire, she handed to the company a description of the property destroyed, which she represents under oath as belonging to herself and not to her ward. From all these circumstances, it is apparent that Baldwin, who is represented to have been in failing circumstances for some time before, intended, by this transfer of the policy to his wife, to make over the property to her; and that she believed that she had thereby acquired a title to it, and continued under this belief even after the fire had occurred. It is obvious that this assignment was void, and produced no change either in the right to the property, or in the title to the policy. It is equally obvious that the renewal of the policy enured to the benefit of the community, whether the premium was paid by the husband or by the wife. The legal presumption is, that it was paid with funds of the community. Civ. Code, arts. 2420, 2371. When Baldwin failed in July, 1838, all his rights and property, as head of the community, passed to his creditors by the surrender, whether included in his schedule or not. 11 La. 531.

It is true that these houses could not be surrendered as a subject of property distinct from the land, but he transmitted to his creditors his interest in them subject to the election given by law to the owner of the soil, and his claim for the amount of the policy in case of their destruction by fire. What title then has the plaintiff to claim either, in her own name, or as tutrix of her child? She has shown none in herself. As to the minor, the property was destroyed before the event by which he might have acquired the absolute ownership of it. And, moreover, his interest, if he had an insurable one in it, was not protected, nor intended to be protected by this policy. This view of the case renders it, perhaps, unnecessary to express any positive opinion on that part of the defence which charges Baldwin with having himself set fire to the houses. We must say, however, that the evidence raises a strong presumption that he did commit the act. Shortly before the fire, and when the suit for a separation was pending, he declared to several persons his determination that his wife should derive no benefit from the houses. This was, no doubt, said under the belief that, by the transfer of the policy, made to her when a better state of feeling existed between them, she had become the owner of the property. We find him, also, on his arrival at Galveston, to which place he fled the day after the fire, writing letters to the defendants, in which he urges them not to pay the loss, and attempts to direct their suspicions against the plaintiff.

It is therefore ordered, that the judgment of the Commercial Court be reversed, and that ours be for the defendants, with costs in both courts.

